1

2

3

4

5

6

7

8        UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
9                  AT TACOMA

10   DARREL W. JERNIGAN,

11                  Plaintiff,              CASE NO. 11-cv-5710-RBL-JRC

12        v.                                REPORT AND RECOMMENDATION
                                            ON PLAINTIFF'S COMPLAINT
13   MICHAEL J. ASTRUE, Commissioner
     of the Social Security Administration, Noting Date: July 13, 2012
14

15                  Defendant.

16

17        This matter has been referred to United States Magistrate Judge J. Richard

18   Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

19   4(a)(4), and as authorized by <u>Mathews, Secretary of  H.E.W. v. Weber</u>, 423 U.S. 261,

20   271-72 (1976).  This matter has been fully briefed (<u>see</u> ECF Nos. 16, 23, 26).

21        The Administrative Law Judge ("the ALJ") provided clear and convincing reasons

22   for his failure to credit fully specific medical opinions provided by Drs. Zarkowski,

23   Yuodelis-Flores and Oyemaja, including inconsistency with plaintiff's admitted social

24

activities, inconsistency with the treatment notes, strong mental status examination ("MSE") results and reliance on plaintiff's subjective reports.

Although plaintiff failed to raise properly the issue of plaintiff's credibility, the Court has determined independently that the ALJ's review of plaintiff's credibility was proper. The ALJ provided clear and convincing reasons for his failure to credit fully plaintiff's testimony, including poor work history and motivation to work, drug-seeking behavior, inconsistent statements, manipulative behavior, medical treatment records and strong MSE results.

In addition, the ALJ did not commit harmful error during his step three determination that plaintiff's impairments did not meet or medically equal a Listed Impairment. Finally, the Court finds that the written decision by the ALJ and the ultimate conclusion regarding disability are supported by substantial evidence in the record overall.

For these reasons, this matter should be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

<u>BACKGROUND</u>

Plaintiff, DARREL W. JERNIGAN, was thirty-seven years old on his amended alleged onset date of March 1, 2009 (Tr. 16, 110). On his work activity report, plaintiff indicated a couple of months of work as a janitor and six days of work as a general laborer (Tr. 122). These jobs may represent all of plaintiff's work history since 1997, as his treatment record includes the comment that plaintiff reported that "in the last 11 yrs, he has only worked a couple of months" (Tr. 692; <u>see also</u> Tr. 119-20). According to the

ALJ's decision, the only year in which plaintiff's earnings were above the level for substantial gainful activity "was in 1996, when he worked at Radio Shack" (Tr. 24 (*citing* Exhibit 2d, i.e., Tr. 114-17)). Plaintiff has at least the severe impairments of HIV infection, depression, anxiety disorder and borderline personality disorder (see Tr. 18).

PROCEDURAL HISTORY

Plaintiff filed an application for Title II disability insurance benefits in January, 2010 and Title XVI supplemental security income benefits in November, 2010 (Tr. 16, 110-113). His applications were denied initially and following reconsideration (Tr. 65-71). The amendment by plaintiff at his hearing of his alleged date of disability onset was such that he no longer was entitled to a period of disability and disability insurance benefits because he did not have disability insured status on the amended date of onset (see Tr. 16).

Plaintiff's requested hearing on the denial of his application for supplemental security income benefits was held before Administrative Law Judge John P. Costello ("the ALJ") on February 9, 2011 (Tr. 34-62, 72-79). On February 24, 2011, the ALJ issued a written decision in which he found that plaintiff was not disabled pursuant to the Social Security Act (Tr. 13-33). On July 21, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-4). See 20 C.F.R. § 404.981.

In September, 2011, plaintiff filed a complaint seeking judicial review of the ALJ's written decision (see ECF Nos. 1, 3). On November 15, 2011, defendant filed the sealed administrative transcript ("Tr.") regarding this matter (see ECF Nos. 14, 15). In his

Opening Brief, among other issues, plaintiff raises the issues of whether or not the ALJ erred in his review of the medical evidence by isolating the effects of plaintiff's physical impairment from the effects of plaintiff's mental impairment when making his step three Listing finding of the sequential disability evaluation process and by rejecting opinions from treating physicians and an examining doctor (see ECF No. 16, pp. 1-2). Plaintiff's treating physicians include Dr. Paul Anthony Zarkowski, M.D. (Dr. Zarkowski") and Dr. Christine Elizabeth Yuodelis-Flores, M.D. ("Dr. Yuodelis-Flores") and his examining doctors include Dr. Julie Oyemaja, Psy.D. ("Dr. Oyemaja"). Plaintiff also contends that the ALJ improperly rejected plaintiff's global assessment of functioning (GAF) scores and failed to pose a hypothetical to the vocational expert that was based on all of plaintiff's limitations (id. at p. 2).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other

substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (1996) (per curiam) (*quoting* Andrews, supra, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the

adjudicator may have been thinking." <u>Bray v. Comm'r of SSA</u>, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing* <u>SEC v. Chenery Corp.</u>, 332 U.S. 194, 196 (1947) (other citation omitted)); <u>see also</u> <u>Molina v. Astrue</u>, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. April 2, 2012) (Dock. No. 10-16578); <u>Stout v. Commissioner of Soc. Sec.</u>, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." <u>Stout</u>, <u>supra</u>, 454 F.3d at 1054 (*citing* <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. <u>Molina</u>, <u>supra</u>, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; <u>see also</u> 28 U.S.C. § 2111; <u>Shinsheki v. Sanders</u>, 556 U.S. 396, 407 (2009); <u>Stout</u>, <u>supra</u>, 454 F.3d at 1054-55.

<u>DISCUSSION</u>

I.      <u>The ALJ evaluated properly plaintiff's testimony and credibility</u>.

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1999); <u>Waters v. Gardner</u>, 452 F.2d 855, 858 n.7 (9th Cir. 1971); <u>Calhoun v. Bailar</u>, 626 F.2d 145, 150 (9th Cir. 1980). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. §

423(d)(5)(A)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain [or fatigue] not severe enough to preclude gainful employment." See Fair, supra, 885 F.2d at 603. The ALJ may "draw inferences logically flowing from the evidence." Sample, supra,694 F.2d at 642 (*citing* Beane v. Richardson, 457 F.2d 758 (9th Cir. 1972); Wade v. Harris, 509 F. Supp. 19, 20 (N.D. Cal. 1980)).

Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)); Reddick, supra, 157 F.3d at 722 (citations omitted); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Smolen, supra, 80 F.3d at 1284; see also Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (reliance on inconsistent statements concerning drug use proper).

Whether or not the ALJ should accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; Smolen, 80 F.3d at 1281 (*citing* Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)). First, the ALJ

must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, supra, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing* Cotton, 799 F.2d at 1407். Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. Smolen, supra, 80 F.3d at 1283-84; Reddick, supra, 157 F.3d at 722 (*citing* Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996); Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Plaintiff did not challenge the ALJ's review of plaintiff's testimony and credibility in his Opening Brief and arguably has waived such challenge. Cf. Thompson v. Commissioner, 631 F.3d 642, 649 (9th Cir. 1980), *cert. denied*, 452 U.S. 961 (1981) ("appellants cannot raise a new issue for the first time in their reply briefs") (*citing* U.S. v. Puchi, 441 F.2d 697, 703 (9th Cir. 1971), *cert. denied*, 404 U.S. 853 (1971)); U.S. v. Levy, 391 F.3d 1327, 1334 (11th Cir. 2004) ("this Court *will not* consider claims raised in a petition for rehearing that were never raised, in any form, in a defendant's initial brief on direct appeal") (*citing* U.S. v. Ardley, 242 F.3d 989, 990 (11th Cir. 2001)(emphasis in original)). The Court notes that defendant has been denied any opportunity to respond to this argument raised for the first time in plaintiff's reply brief.

However, this Court has an independent burden to determine whether or not "the Commissioner's decision is: (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce, supra, 557 F.3d at 1115 (*citing* Moore, supra, 278 F.3d at 924); Smolen, supra, 80 F.3d at 1279; see also Levy, supra, 391 F.3d at 1335 ("the issue is not whether this Court has the power to consider issues not raised in the initial brief; of course it does"). Here, the outcome is the same regardless, as despite plaintiff's general and delayed objection to the ALJ's review of plaintiff's credibility and testimony, said review is not blemished by harmful error.

When discussing plaintiff's credibility, the ALJ described plaintiff's allegations:

> In his disability report in March 2010, the claimant alleged that he could not work because of HIV, bipolar disorder, PTSD, anxiety, depression, back pain, borderline personality disorder, and suicidal ideation (internal citation to Exhibit 3E). In his function report, he stated that he had difficulty sitting, seeing, remembering, completing tasks, concentrating, understanding, and getting along with others. He stated that he did not handle stress or changes in routine well. He reported being unable to finish what he started or pay attention for very long. He stated that it was a full-time job to just manage his physical and mental health (internal citation to Exhibit 4E). In December 2010, he reported being socially isolated (internal citation to Exhibit 9E). In January 2011, he reported taking medications for depression and HIV (internal citation to Exhibit 10E).

> At the hearing, the claimant complained of severe fatigue. He stated that he sometimes slept up to 14 hours per day. He reported having occasional nausea from medication. He reported being reclusive and socially isolated. He complained of recurring nightmares and flashbacks at least once per week. He stated that he was so overwhelmed that he could not even care for his personal needs. He stated that he had bad days once per week.

(Tr. 21).

The ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (Tr. 21). In the context of plaintiff residual functional capacity[1] ("RFC") (see Tr. 20) and the explicit credibility factors relied on by the ALJ, it is clear which allegations the ALJ deemed not credible and it is clear which evidence the ALJ found did not support plaintiff's allegations (see Reply Brief, ECF No. 26, p. 2).

The ALJ here relied on a number of factors when he failed to credit fully plaintiff's testimony regarding his symptoms and limitations. For example, the ALJ relied on plaintiff's sparse work history, which already has been discussed by the Court, see supra, BACKGROUND (Tr. 24). The ALJ found that plaintiff may have had "poor motivation to work" (id.). This finding is supported by substantial evidence in the record and such reliance is appropriate (see Tr. 114-17, 119-20, 121-23, 692).

The ALJ also relied on plaintiff's strong performance on his mental status examinations ("MSEs") and his other medical treatment records (see Tr. 21-22). For example, regarding plaintiff's physical impairment, the ALJ noted that plaintiff did not require any antiretroviral drugs until approximately five years subsequent to his HIV-positive diagnosis "because the virus had been either asymptomatic or stable" (Tr. 21

---

[1] The ALJ's finding regarding plaintiff's RFC includes the following:
I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant should have the opportunity to change positions every hour (i.e., after standing or walking for hour, he has the opportunity to sit for five minutes at his discretion before standing or walking for another hour). He can have not more than occasional interaction with coworkers and the general public. (Tr. 20).

(*citing* Exhibits 5F/3; 8F/6-7, 15, 73; 13F/101). The ALJ also noted that after plaintiff's CD4 levels dropped and he was prescribed HAART medication, "his CD4 levels had increased and his viral loads had decreased" (id. (*citing* Exhibit 13F/8)).

The ALJ noted many intact results on plaintiff's MSEs, such as an ability to perform a three-step instruction and no short-term or long-term memory impairment (see Tr. 22; see also Tr. 687). Further discussing plaintiff's mental impairments and limitations, the ALJ noted that plaintiff indicated in November, 2010 that he was noticing a good response to his mood while taking Paxil (id.). The ALJ also noted that plaintiff was contemplating volunteering at the zoo and had approached his building manager about starting a support group for individuals in public housing (id.). The ALJ found this to be inconsistent with plaintiff's alleged severe social limitations.

When evaluating plaintiff's credibility, the ALJ also relied on plaintiff's drug-seeking behaviors (Tr. 23). The ALJ noted a report by Dr. Christina Graham, Ph.D. (Dr. Graham"), of "several recent requests by [plaintiff] for benzodiazepines" (id.). The ALJ also noted that plaintiff "asked Dr. Yuodelis-Flores to prescribe him Valium or Xanax for anxiety, depression, and back pain[, but] [w]hen Dr. Yuodelis-Flores refused, he became angry" (id.). The ALJ quoted plaintiff's reported statement to Dr. Yuodelis-Flores that "'I don't want to see you anymore if you do not give me Xanax because I don't trust you if you don't trust me'" (id. (*citing* Exhibit 11F/1, i.e., Tr. 512); see also Tr. 622). The Court notes that plaintiff's medical treatment records include the note that he told his other doctor that he did not want to see Dr. Yuoledis-Flores again "due to 'personal differences' [and was] requesting psychiatric eval by another provider in Madison" (Tr.

721, 727). When he expanded regarding this topic, he stated that he believed that he needed "to find a way to feel better that d[id] not involve pills" (Tr. 717). A subsequent treatment report includes the note that plaintiff was "upset with his psychiatrist at Madison because she was unwilling to prescribe Valium" (Tr. 621). The ALJ's finding that plaintiff exhibited drug-seeking behaviors is supported by substantial evidence in the record as a whole.

The ALJ also found that plaintiff's credibility was undermined by "his manipulative behaviors" (Tr. 23). The ALJ's decision included the following discussion:

> For example, in June 2009, [plaintiff] asked Dr. Yuodelis-Flores to update his ORC records to reflect that he had been free from substances for the last year. The reason he wanted this changed was so that he no longer would have to go through a payee to receive his DSHS benefits. Dr. Yuodelis-Flores denied his request. Dr. Yuodelis-Flores explained 'I cannot do this without concrete evidence such as negative urine tox screen.' The claimant was upset about this and terminated the appointment early. Dr. Yuodelis-Flores noted that the claimant's last urine tox screen had been positive for cannabis, and that he had previously admitted to relapsing on methamphetamines in October 2008. When Dr. Yuodelis-Flores offered to conduct an updated drug urine test, the claimant refused (internal citation to exhibit 13F/27, i.e., Tr. 569).

(Tr. 23-24). The Court finds that the findings by the ALJ regarding plaintiff's "manipulative behaviors" is supported by substantial evidence in the record as a whole and was relied on properly in the determination regarding plaintiff's credibility.

When evaluating plaintiff's testimony, the ALJ also found that plaintiff had provided inconsistent testimony and statements (Tr. 23). This finding is supported by substantial evidence in the record. For example, in addition to this Court's discussion regarding plaintiff's drug seeking behavior, which supports the ALJ's finding about

inconsistent statements as well, plaintiff denied the use of methamphetamine on a number

of occasions. However, the record demonstrates that he was using methamphetamine

during the time frames for which he denied its use to his medical providers (see, e.g., Tr.

619). Dr. Graham's treatment records include the following:

> When asked about presenting problems, he described himself as a 'drug
> addict' with a methamphetamine abuse history for the past 11 years
> following his mother's suicide. . . . . When asked, he stated that he
> last used methamphetamines 6 months ago. Of note, this statement
> contradicts information contained in Randy Lazenby's note of 2 days
> ago in which the patient admitted to methamphetamine use over the
> weekend (5 days prior to today).

(Tr. 619). The Court finds that the ALJ's finding that plaintiff provided inconsistent

statements about his drug use to his providers is based on substantial evidence in the

record as a whole and was relied on properly.

This Court does not make an independent judgment regarding the credibility of

plaintiff. However, for the above-stated reasons and based on the relevant record, the

Court concludes that the ALJ provided clear and convincing reasons for his failure to

credit fully plaintiff's credibility and testimony regarding his impairments and

limitations.

II.    The ALJ properly evaluated the medical evidence.

A.  Medical Opinion Evidence

The ALJ is responsible for determining credibility and resolving ambiguities and

conflicts in the medical evidence.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998);

Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).    If the medical evidence in the

record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting* <u>Waters v. Gardner</u>, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing* <u>Calhoun v. Bailar</u>, 626 F.2d 145, 150 (9th Cir. 1980))). It is not the job of the court to reweigh the evidence: If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002) (*citing* <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 599, 601 (9th Cir. 1999)). Determining whether or not inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." <u>Morgan, supra</u>, 169 F.3d at 603. The ALJ also may draw inferences "logically flowing from the evidence." <u>Sample</u>, <u>supra,</u> 694 F.2d at 642 (citations omitted).

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." <u>Edlund v. Massanari</u>, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); <u>see also</u> 20 C.F.R. § 416.902 (treating physician is one who provides treatment and has "ongoing treatment relationship" with claimant). However, "[t]he ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190, 1195 (9th Cir. 2004) (*quoting* <u>Magallanes v.</u>

Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In addition, "[a] physician's opinion of disability 'premised to a large extent upon [plaintiff]'s own accounts of h[er] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" Morgan, supra, 169 F.3d at 602 (*quoting* Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989) (*citing* Brawner v. Sec. HHS, 839 F.2d 432, 433-34 (9th Cir. 1988))).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (*citing* Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, supra, 157 F.3d at 725 (*citing* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 725 (*citing* Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." Id. (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

In general, more weight is given to a treating medical source's opinion than to the opinions of those who do not treat the claimant. <u>Lester</u>, <u>supra</u>, 81 F.3d at 830 (*citing* <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987)). On the other hand, an ALJ need not accept the opinion of a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings or by the record as a whole. <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190, 1195 (9th Cir. 2004) (*citing* <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001)); <u>see also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002).

1. Dr. Zarkowski, M.D., treating physician

In addition to his treatment records, Dr. Zarkowski provided a medical opinion letter on February 8, 2011 regarding plaintiff's limitations on his ability to work (<u>see</u> Tr. 735-36). He opined that plaintiff was "unlikely to engage in simple work without excessive absenteeism due to impairment in social interaction" (Tr. 735). He explained why he opined that had plaintiff attempted even sedentary full time work, his impairments would have resulted in absenteeism of three or more days per month, on a more probable than not basis, as plaintiff's "complaints of mood swings and anger problems would lead to greater/more absenteeism than 3 days per month" (Tr. 736).

The ALJ here failed to credit the opinion by Dr. Zarkowski for a number of reasons (<u>see</u> Tr. 26). The ALJ first found that Dr. Zarkowski had begun seeing plaintiff in September, 2010 and therefore had "no basis to offer an opinion as to the claimant's functioning prior to that time" (Tr. 26). Although the Court finds that Dr. Zarkowski has some basis to form a retrospective opinion, the Court also finds that this reason by the

ALJ provides some support for the ALJ's decision to give little weight to Dr. Zarkowski's opinion, at least as it related to a time period prior to Dr. Zarkowski's first examination of plaintiff in September, 2010.

The ALJ also relied on a finding that Dr. Zarkowski's opinion was not consistent "with the treatment notes since March, 2009, which indicate that, since becoming clean and sober and when compliant with medication, the claimant has more stable mood, is future oriented has denied self-harm notions, and has intact cognition" (Tr. 26). The ALJ continued:

> [Plaintiff] is able to independently care for his personal hygiene or grooming, cook, shop, clean, do laundry, manage his finances, and exercise for an hour per day. While he has some difficulty in relationships, he is able to establish and maintain them. He spends time with two or three close friends playing games. He interacts appropriately with providers (internal citation to Exhibit 22F/2, 7). In January 2010, he was even talking about organizing support groups for people in public housing and volunteering at the zoo. The evidence since March 2009 indicates that the claimant has some mental limitations but not to the degree of disability. Finally, to the extent that Dr. Zarkowski relied on the claimant's subjective complaints, his opinion is further rejected. The claimant is manipulative, has engaged in drug seeking behavior, has poor motivation to work, and has been unforthcoming about his substance use. These factors all reflect a lack of overall credibility.

(id.).

The Court already has determined that the ALJ's findings regarding plaintiff's credibility were supported by substantial evidence in the record as a whole, see supra, section I. The Court now finds that the ALJ's reliance on his findings regarding plaintiff's credibility to reject Dr. Zarkowski's opinion "to the extent that Dr. Zarkowski relied on the claimant's subjective complaints" was proper (see Tr. 26). The Court notes that Dr. Zarkowski specifically indicated his reliance on plaintiff's subjective complaints

with respect to his opinion about plaintiff's likely excessive absenteeism: Plaintifff's "complaints of mood swings and anger problems would lead to greater/more absenteeism than 3 days per month" (see Tr. 736). It is clear from this explicit note of Dr. Zarkowski that his opinion that plaintiff would experience excessive absenteeism is based on plaintiff's "complaints of mood swings and anger problems" (see id.). The Court concludes that the ALJ's rejection of this specific opinion by Dr. Zarkowski was based on substantial evidence in the record as a whole and was based on clear and convincing reasons. See Lester, supra, 81 F.3d at 830.

The ALJ provided an additional reason to reject Dr. Zarkowski's opinion that plaintiff "would be unlikely to engage in simple work without excessive absenteeism due to impairment in social interaction" (see Tr. 26, 735). The ALJ found that Dr. Zarkowski's opinion was not consistent with plaintiff's treatment notes since March, 2009 (see Tr. 26). Although plaintiff has directed the Court to aspects of Dr. Zarkowski's treatment records that are consistent with his opinions, such as MSEs, the ALJ's finding on this issue nevertheless is based on substantial evidence in the record as a whole.

For example, although Dr. Zarkowski opined that plaintiff's impaired social interaction directly would result in absenteeism sufficiently excessive as to preclude gainful employment, the ALJ noted that plaintiff "was able to establish and maintain relationships;" that he spent "time with two or three close friends playing games;" interacted "appropriately with providers;" and "was even talking about organizing support groups for people in public housing and volunteering at the zoo" (Tr. 26).

For the reasons stated and based on the relevant record, the Court concludes that the ALJ provided clear and convincing reasons for his decision to give little weight to the opinions of Dr. Zarkowski. See Lester, supra, 81 F.3d at 830.

2.   Dr. Youledis-Flores, M.D., treating physician

Plaintiff complains about the lack of discussion by the ALJ of the April 24, 2009 assessment by Dr. Yuodelis-Flores and contends that the ALJ improperly discredited her opinion (see Opening Brief, ECF No. 16, p. 16). However, defendant points out that these treatment records by Dr. Yuodelis-Flores do not contain any functional analysis or opinions regarding plaintiff's limitations on his ability to work (see Response, ECF No. 23, pp. 10-11 (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223 (9th Cir. 2010); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685 (9th Cir. 2009))). Therefore, it is unclear what effect a review of these records would have on the ALJ's residual functional analysis or on his decision overall. Plaintiff does not reply to this contention and the Court concludes that it has merit (see Reply, ECF No. 26, pp. 2-7). Based on a review of the relevant record, the Court finds that there are few opinions in the cited treatment record of Dr. Yuodelis-Flores, and that the opinions included did not consist of significant, probative evidence that was rejected improperly by the ALJ, as discussed further below.

The report by Dr. Yuodelis included a lengthy discussion of plaintiff's history, the vast majority of which appears to be self-reported by the plaintiff (see Tr. 512-513). Dr. Yuodelis-Flores conducted a mental status examination and observed plaintiff's depressed and anxious mood, as well as is appropriate affect (Tr. 513). She opined that

his intellect was intact, but that his insight and judgment were impaired (id.). Dr. Yuodelis-Flores opined that plaintiff suffered from the impairments of major depression; generalized anxiety disorder; borderline personality disorder; and methamphetamine and marijuana dependence in remission (id.). She also diagnosed plaintiff with a rule out diagnosis of bipolar disorder (id.).

Dr. Yuodelis-Flores included an impression/plan, which included restarting plaintiff on paxil, and continuing his prescription for ambien (Tr. 514). She indicated that plaintiff's compliance remained "an issue which complicate[d] treatment of his depression and anxiety" and opined that he was doing well with his sobriety (id.).

Given the context of the medical record that was discussed by the ALJ in his written decision, there does not appear to be any specific significant probative evidence that was offered by Dr. Yuodelis-Flores in this report that was not included in some fashion in the ALJ's written decision. For example, consistent with the diagnoses of Dr. Yuodelis-Flores, the ALJ found that plaintiff suffered from the severe impairments of HIV infection, depression, anxiety disorder and borderline personality disorder (see Tr. 18). Although the ALJ did not discuss Dr. Yuodelis-Flores assignment of a GAF score of 40, the ALJ interpreted the facts relevant to the GAF scores and gave reasons for rejecting similar and identical GAF scores, as discussed further below, see infra, section II, B. See Reddick, supra, 157 F.3d at 725 (the ALJ can provide specific and legitimate reasons to discount medical opinion evidence by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings"); Magallanes, supra, 881 F.2d at 751.

For these reasons and based on the relevant record, the Court concludes that the ALJ did not commit harmful legal error in his evaluation of the opinions of Dr. Yuodelis-Flores. Plaintiff has not attempted to demonstrate any alteration to the ALJ's determination regarding plaintiff's residual functional capacity that is justified based on her opinions. Plaintiff has not replied to defendant's contention that there was no opinion from Dr. Yuodelis-Flroes that plaintiff suffered from any particular functional limitation as a result of his impairments (see Reply, ECF No. 26, pp. 2-7; see also, infra, section 2.d). To the extent that the opinions of Dr. Yuodelis-Flores were rejected by the ALJ, the written decision contained clear and convincing reasons for such rejection. See Lester, supra, 81 F.3d at 830.

3. Dr. Julie Oyemaja, Psy.D. ("Dr. Oyamaja"), examining doctor

The ALJ gave no weight to the medical opinion of Dr. Oyemaja even though the ALJ relied heavily on her November 2009 mental status examination ("MSE") of plaintiff when making the determination that plaintiff was not disabled (see Tr. 25, 26-27). The ALJ included the following in his written decision regarding Dr. Oyemaja's opinion:

> In November 2009, Julie Oyemaja, Psy.D., performed a DSHS examination. Dr. Oyemaja diagnosed major depressive disorder, recurrent, severe, without psychosis, polysubstance dependence, in sustained full remission, and PTSD, chronic. D. Oyemaja assigned the claimant a GAF score of 45, indicating serious symptoms. Dr. Oyemaja opined that the claimant had marked to severe limitations in all five domains of cognitive factors and marked to severe limitations in four out of five domains of social factors (internal citation to Exhibit 22F).

> I give no weight to Dr. Oyemaja's opinion. First, Dr. Oyemaja is not a treating source. Second, her opinion is not supported by the medical

status examination results, which were essentially normally. (sic) For instance, the claimant had fair eye contact and was fully oriented. His speech was pressured but otherwise normal. He recalled 3/3 objects immediately. He displayed no short-term or long-term memory impairment. He was able to accurately perform serial 3 and 7 calculations. He followed a three-step instruction. He was able to abstract proverbs. He denied any suicidal ideation or psychosis. He showed adequate insight and judgment (internal citation to Exhibit 22F/9-10). These results are not consistent with someone who has marked to severe limitations in all five domains of cognitive factors. Third, I reject Dr. Oyemaja's opinion because it is based primarily on the claimant's subjective report. The claimant, however, is not credible. For example, contrary to his report to Dr. Oyemaja that he last used substances one and half years ago, the record indicates that he had used methamphetamines and marijuana more recently than that (internal citation to Exhibits 11F/1, 13F/77). Although he reported to Dr. Ojemaja that he had been diagnosed with bipolar disorder, the record indicates that he has not clear history of manic episodes (internal citation Exhibit 8F/36). He told Dr. Oyemaja that he had also been diagnosed with PTSD, but this is not supported by treatment records from Harborview Medical Center, which document no such diagnosis. He told Dr. Oyemaja that he had "full blown" AIDS. While he has been diagnosed with the HIV, medical records from Harborview reveal that, up until August 2009, the virus had been either stable or asymptomatic. Since starting HAART medication in September 2009, his CD4 levels had increased and his viral loads were barely detectable despite noncompliance with treatment recommendations. His claim of "full blown" AIDS is therefore not supported.

(Tr. 25).

The first reason given by the ALJ for his failure to credit fully the opinion of Dr. Oyemaja, that she was not a treating source, is a reason to give her opinion less weight than that of a treating source, not a reason sufficient in of itself to fail to give it any weight. However, the second reason supplied by the ALJ, that Dr. Oyemaja's opinion was not supported by the normal mental status examination ("MSE") results, is supported by substantial evidence in the record as a whole.

This conclusion is based in large part on this Court's finding that the ALJ's quoted discussion of plaintiff normal and adequate MSE results is an accurate reflection of plaintiff's MSE results (see Tr. 25; see also Tr. 687-88). The Court also finds that the ALJ's finding that plaintiff's MSE results were "not consistent with someone who has marked to severe limitations in all five domains of cognitive factors" is a finding that is supported by substantial evidence in the record as a whole (Tr. 25; see also Tr. 687-88). See Magallanes, supra, 881 F.2d at 750.

The ALJ's finding that plaintiff's MSE results were normal was not entirely the ALJ's interpretation of the results, but the contemporaneous interpretation by Dr. Oyemaja. For example, Dr. Oyemaja's notes during the MSE indicate her opinion that plaintiff's abstract thought and insight/judgment were "adequate," although plaintiff's fund of knowledge was inadequate (see Tr. 687). Dr. Oyemaja indicated that in all but one area of plaintiff's activities of daily living, plaintiff had none or only mild impairment (see Tr. 688). She found that he was impaired regarding friends/socialization (id.).

Regarding memory performance, Dr. Oyemaja observed that plaintiff recalled three out of three words after a short delay (see Tr. 687). She assessed that plaintiff did not suffer from any memory impairment (id.). Regarding concentration, Dr. Oyemaja indicated that plaintiff had intact performance of serial 3s and 7s (id.).

Curiously, Dr. Oyemaja indicated that plaintiff successfully completed a three-step task (id.), however, when opining on plaintiff's limitations on his ability to work, she indicated that he was markedly impaired in his ability to understand, remember and

follow simple (one or two step) instructions (Tr. 683). Dr. Oyemaja does not provide an explanation for this discrepancy and in the section in which one can provide additional observations which "may have a bearing on this individual's ability to perform during a normal work day," Dr. Oyemaja wrote in "NA" (Tr. 686). Similarly, although Dr. Oyemaja assessed that plaintiff's insight and judgment was "adequate" (Tr. 687), she opined that he suffered from severe limitations in his ability to exercise judgment and make decisions (Tr. 684).

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination [MSE] allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). Therefore, Dr. Oyemaja's opinion regarding plaintiff's functional limitations may have been based on objective observations that were not included explicitly within her report.

However, based on the record that is available to the Court, and was available to the ALJ, the Court finds that the ALJ's finding that Dr. Oyemaja's opinion was not supported by the medical status examination ("MSE") results and that plaintiff's MSE results essentially were normal are findings based on substantial evidence in the record as a whole (Tr. 25). See Magallanes, supra, 881 F.2d at 750.

Finally, the ALJ rejected Dr. Oyemaja's opinion because he found it to be based primarily on the claimant's subjective report. Regarding social factors, Dr. Oyemaja

noted that plaintiff had 2-3 close friends and spent his time going to the park or zoo (Tr. 680). She also noted that plaintiff was interested in volunteer work at the zoo and that he reported that he used to be a customer service manager at Computer City in Alaska (id.). However, regardless of these various self-reported social activities and skills, Dr. Oyemaja opined that plaintiff was impaired with respect to friends and socialization (Tr. 688). As there appears to be a lack of any other evidence supporting such a social impairment, Dr. Oyemaja appears to have based this rating on plaintiff's history or his self-reported concentration abilities as they relate to reading, watching television and conversing with others; or on his report of vegetative symptoms as they relate to his sleep, appetite and hobbies (see id.). Importantly, Dr. Oyemaja does not indicate any objective observations or assessments in her report that substantiate her opinion regarding multiple severe limitations in plaintiff's abilities, such as his ability to relate appropriately to co-workers and supervisors and his ability to interact appropriately in public contacts (Tr. 684).

Similarly, Dr. Oyemaja indicates that plaintiff is suffering from "now full blown AIDS" (Tr. 688). This opinion from Dr. Oyemaja appears to be based on plaintiff's self-report that he was "currently struggling with full blown AIDS" (see Tr. 680). The Court has not been directed to evidence from plaintiff's medical record that he was not only HIV-positive, but also demonstrating symptoms of "full blown" AIDS.

For the stated reasons and based on the relevant record, the Court finds that the ALJ's finding that Dr. Oyemaja's opinion report was based in part on plaintiffs self-

reports is a finding based on substantial evidence in the record as a whole. See Magallanes, supra, 881 F.2d at 750.

For the reasons stated and based on the relevant record, the Court concludes that the ALJ provided clear and convincing reasons for his rejection of the opinions of Dr. Oyemaja. See Lester, supra, 81 F.3d at 830.

B.  Plaintiff's Global Assessment of Functioning ("GAF") scores

Plaintiff complains that the ALJ failed to credit appropriately his GAF scores. The ALJ included the following in his written decision:

> Since March, 2009, medical records from Harborveiw Medical Center document GAF scores of 40, indicating that the claimant has serious symptoms (internal citation to Exhibits 11F, 24F). I give little weight to these GAF scores because they are based primarily on the claimant's subjective report. As discussed above, the claimant lacks credibility. The GAF factors also do not factor in the claimant's daily activities. The claimant has not more than mild impairment in hygiene, grooming, cooking, shopping, cleaning, doing laundry, managing money, and using transportation (internal citation to exhibit 22F/7). He socializes with friends and usually interacts appropriately with providers.

(Tr. 26).

Plaintiff argues in his Opening Brief that the ALJ's GAF analysis was deficient because: (1) the ALJ's finding that the GAF scores were based primarily on plaintiff' subjective report is not a finding based on substantial evidence in the record because Drs. Zarkowski and Yuodelis-Flores administered MSEs and that these doctors were "in a better position to assess [plaintiff]'s credibility;" and (2) the ALJ's reliance on Exhibit 22F was erroneous as this exhibit does not include any mention of the activities in daily living relied on by the ALJ and does not demonstrate mild impairments in his ability to

socialize (<u>see</u> Opening Brief, ECF No. 16, pp. 20-21). For the reasons discussed below, both of these arguments fail.

Plaintiff contends that even though Dr. Oyemaja noted plaintiff's friends and social activities, she also noted that plaintiff had a "conflicted relationship with his current psychiatrist" (<u>id.</u> at p. 20). Plaintiff contends that this finding demonstrates that plaintiff "did not generally get along with his treatment providers" (<u>id.</u>).

Although Dr. Oyemaja noted that plaintiff had a conflicted relationship with his psychiatrist, the Court finds that the ALJ's finding that plaintiff usually interacted appropriately with providers is a finding based on substantial evidence in the record as a whole (<u>see</u> Tr. 26). First, the ALJ found that plaintiff usually interacted appropriately with providers, not always, but "usually." In addition, based on a review of the record and the numerous findings in MSEs that plaintiff was well groomed, with good eye contact and no psychomotor agitation, the Court finds that there is substantial evidence in the record for the ALJ's finding here regarding appropriate behavior with providers (<u>see</u>, <u>e.g.</u>, Tr. 692, 710, 717; <u>see also</u> Tr. 728). Finally, this Court has found proper the ALJ's finding that plaintiff's "conflicted relationship" with his psychiatrist was an attempt to acquire narcotic prescription medication and that regarding this incident, substantial evidence in the record supports the ALJ's finding that plaintiff provided inconsistent statements to his treatment providers, <u>see</u> <u>supra</u>, section I.

For these reasons, the Court concludes that plaintiff's "conflicted relationship" with his psychiatrist, as noted by Dr. Oyemaja, does not render improper the ALJ's finding that plaintiff usually interacted appropriately with providers.

Plaintiff also noted some of Dr. Oyemaja's observations and argued that her treatment report cannot be relied on by the ALJ in support of his failure to credit fully plaintiff's GAF scores because the ALJ erred when assessing these treatment records by Dr. Oyemaja (Opening Brief, ECF No. 16, pp. 20-21).

First, the Court notes that the ALJ's evaluation of the opinions of Drs. Zarkowski, Yuodelis-Flores and Oyemaja already has been found to be proper, see supra, sections II. A., 1-3. The Court specifically found that the ALJ's rejection of Dr. Zarkkowski's opinions regarding social limitations and excessive absenteeism was proper and was supported by the ALJ's findings supported by substantial evidence of inconsistency with treatment records and that Dr. Zarkowski relied, at least in part, on plaintiff's subjective complaints, see supra, section II. A. 1. Similarly, the Court found that the ALJ appropriately relied on plaintiff's strong MSE results and on the fact that Dr. Oyemaja relied on plaintiff's subjective report in order to fail to credit fully her opinions regarding the degree of plaintiff's functional limitations, see supra, section II. A. 3.

Therefore, plaintiff's argument that Dr. Oyemaja's psychological evaluation cannot be relied on by the ALJ in support of his failure to credit fully plaintiff's GAF scores because the ALJ erred when assessing these treatment records by Dr. Oyemaja fails. In a similar fashion, plaintiff's contention that the ALJ erred in relying on Dr. Oyemaja's psychological evaluation as evidence of mild impairment regarding daily activities because this specific record cited by the ALJ did not mention the activities cited by the ALJ also fails.

As argued by defendant, even though the ALJ relied on activities of daily living that were not discussed within the exhibit cited by the ALJ in this GAF discussion, "the ALJ has cited this same information elsewhere in his decision and included not only Dr. Oyemaja's report but also multiple additional treatment records" (Response, ECF No. 23, p. 16 (*citing* Tr. 23, 142-48, 708, 710, 717)). Indeed, the Court notes that an ALJ can provide specific and legitimate reasons to discount medical opinion evidence by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." See Reddick, supra, 157 F.3d at 725 (*citing* Magallanes v. Bowen, 881 F.2d at 751). From the above, this Court concludes that the ALJ did so, here.

All of the activities of daily living cited by the ALJ in the discussion of plaintiff's GAF scores were discussed by the ALJ elsewhere, with citations to the relevant record (see, e.g., Tr. 19, 692). For example, the ALJ cited Dr. Zarkowski's treatment records for the assertion that plaintiff reported that he already had approached his building manager about starting support groups for people in public housing and that he might try volunteering at the zoo (Tr. 19 (*citing* Exhibit 24F/2, i.e., Tr. 692)). The Court concludes that these treatment records, along with the other information from plaintiff's medical record discussed by the ALJ in his written decision, also provide substantial evidence in the record for the ALJ's finding that plaintiff suffered from "not more than mild impairment in hygiene, grooming, cooking, shopping, cleaning, doing laundry, managing money, and using transportation" (see Tr. 26). The Court already has discussed the ALJ's proper rejection of Dr. Zarkowski's opinions regarding plaintiff's limitations in social

functioning and now finds specifically that in the context of plaintiff's GAF scores, the ALJ's rejection of the GAF scores in part on the basis of plaintiff's social activities is based on substantial evidence in the record as a whole.

In response to plaintiff's arguments, defendant quotes the Federal Register in support of his contention that the GAF scores are not correlated with disability, and further contends that according to the GAF score assigned by Dr. Oyemaja, plaintiff would not be capable of maintaining any friendships, "yet she noted 'he has 2-3 close friends and spends his time highly occupied with game playing and going to the park or zoo' (Response, ECF No. 23, p. 16 (*quoting* Tr. 680; 65 Fed. Reg. 50746, 50764-65 (August 21, 2000))). Similarly, defendant contends that Dr. Zarkowski likewise noted activities by plaintiff that "an individual with a GAF score of 40 would be incapable of performing," such as engaging in treatment and considering multiple volunteer activities in order to seek healthy social engagement (Response, ECF No. 23, p. 16 (*citing* Tr. 680)). Plaintiff does not reply specifically to either one of these arguments by defendant regarding plaintiff's GAF scores, although he notes that plaintiff never reported to providers that he actually engaged in any of these volunteer activities (see Reply, ECF No. 26, p. 4).

The Court does not find persuasive plaintiff's argument that the ALJ's finding that the GAF scores were based primarily on plaintiff' subjective report is not a finding based on substantial evidence in the record. Defendant notes in his Response that plaintiff failed to challenge the ALJ's review of plaintiff's credibility in his Opening Brief and contends that with respect to the ALJ's reliance on this factor, that plaintiff "offers no new

argument on this matter, only reasserting that treating psychiatrists relied upon not only Plaintiff's subjective statements but also the mental status examination and their observations" (Response, ECF No. 23, p. 16). Again, plaintiff fails to reply specifically to defendant's argument regarding plaintiff's GAF scores.

As noted, the Court already has found that substantial evidence in the record supports the ALJ's finding that Drs. Zarkowski and Oyemaja relied at least in part on plaintiff's subjective report. The Court also already has found that such reliance supported the rejection by the ALJ of the opinions of these doctors because the ALJ's failure to credit fully plaintiff's credibility was proper, see supra, section I. Therefore, plaintiff's argument fails. The Court notes that if the medical evidence in the record is not conclusive, sole responsibility for resolving questions of credibility lies with the ALJ. See Sample, supra, 694 F.2d at 642; Waters, supra, 452 F.2d at 858 n.7; Calhoun, supra, 626 F.2d at 150.

In a similar fashion, plaintiff's argument regarding Dr. Yuodelis-Flores likewise fails. The Court is not persuaded by plaintiff's argument that Dr. Yuodelis-Flores was in a better position than the ALJ to determine credibility. See Sample, supra, 694 F.2d at 642; Waters, supra, 452 F.2d at 858 n.7; Calhoun, supra, 626 F.2d at 150. As previously discussed, the Court has found that the ALJ's finding that plaintiff gave inconsistent statements to his treatment providers is based on substantial evidence in the record as a whole. In addition, the Court already has reviewed the opinion by Dr. Yuodelis-Flores cited by plaintiff in the context of reviewing the ALJ's treatment of her medical opinion, see supra, section II, A., 2.

The ALJ specifically mentioned that plaintiff had been assigned a GAF score of 40, stated his interpretation thereof and made findings (see Tr. 26). Given the context of the ALJ's discussion of the relevant record in his written decision, including the discussion of plaintiff's GAF scores, the Court finds no error in the ALJ's implicit rejection of the assignment of a GAF of 40 by Dr. Yuodelis-Flores.

Based on the relevant record, the Court concludes that to the extent that the GAF scores were rejected, the ALJ properly set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stat[ed] his interpretation thereof, and ma[de] findings." See Reddick, supra, 157 F.3d at 725 (citing Magallanes v. Bowen, 881 F.2d at 751). The ALJ did not commit harmful error in his evaluation of plaintiff's GAF scores.

C.  New evidence submitted by plaintiff to the Appeals Council

Plaintiff contends that new evidence submitted to the Appeals Council supports his contention that the ALJ's decision is not based on substantial evidence in the record as a whole (see Opening Brief, ECF No. 16, pp. 9-10). However, based on plaintiff's contentions and the Court's review of this new evidence, the Court does not find any basis to alter the decision herein that the ALJ's review of the medical evidence and the medical opinion evidence was proper and based on substantial evidence in the record as a whole. For example, plaintiff points out the new evidence supplied by treating physician, Dr. Sheila Dunaway, M.D., who noted that plaintiff "states that [he] must have 14-16 hours of sleep" (see id.; see also Tr. 739). The Court already has found that the ALJ's failure to credit fully plaintiff's allegations regarding the severity of his symptoms was

proper and based on clear and convincing reasons, see supra, section I. This indication, and the other similar indications, of the severity of plaintiff's symptoms in treatment records consisting of plaintiff's self-reports do not support the argument that the ALJ's decision is not based on substantial evidence in the record. The new evidence does not demonstrate that the ALJ's decision should be reversed.

III.    The ALJ did not commit harmful error during his step three evaluation of whether or not plaintiff's impairments met or medically equaled a Listed Impairment.

At step-three of the administrative process, if the administration finds that the claimant has one or more impairments that has lasted or can be expected to last for not less than 12 months and is included in Appendix 1 of the Listings of Impairments, or is equal to a Listed Impairment, the claimant will be considered disabled without considering age, education and work experience.  20 C.F.R. § 404.1520(d).   The claimant bears the burden of proof regarding whether or not she "has an impairment that meets or equals the criteria of an impairment listed" in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings").  Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

Plaintiff argues that he has the Listed Impairments of mood disorder; anxiety disorder; and personality disorder. The Court notes that the relevant Listings are 12.04, Affective Disorder; 12.06 Anxiety Disorders; and 12.08 Personality Disorders[2].

---

[2] According to the specification in the federal regulation, regarding Listing 12.04 Affective Disorders:

Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

**The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied**.

A.  Medically documented persistence, either continuous or intermittent, of one of the following:
    1.  Depressive syndrome characterized by at least four of the following:
        a.  Anhedonia or pervasive loss of interest in almost all activities; or
        b.  Appetite disturbance with change in weight; or
        c.  Sleep disturbance; or
        d.  Psychomotor agitation or retardation; or
        e.  Decreased energy; or
        f.  Feelings of guilt or worthlessness; or
        g.  Difficulty concentrating or thinking; or
        h.  Thoughts of suicide; or
        i.  Hallucinations, delusions, or paranoid thinking; or
    2.  Manic syndrome  .  .  .  .
      or
    3.  Bipolar syndrome  .  .  .  .
**AND**
B. **Resulting in at least two of the following**:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;
**OR**
C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:  .  .  .  .

20 C.F.R. pt. 404, Subpt. P, App. 1, 12.04 (emphases added). According to the specification in the federal

regulation, regarding Listing 12.06, Anxiety Related Disorders,

In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms  .  .  .  . **The required level of severity for these disorders is met when the requirements in both A and B are satisfied**  .  .  .  .

A.  Medically documented findings of at least one of the following:
1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
    a. Motor tension; or
    b. Autonomic hyperactivity; or
    c. Apprehensive expectation; or
    d. Vigilance and scanning; or
2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
4. Recurrent obsessions or compulsions which are a source of marked distress; or

Plaintiff complains that the ALJ did not consider the combined effect of plaintiff's fatigue as caused by his mental impairment along with plaintiff's fatigue as caused by his HIV status when making the determination that plaintiff's impairments did not meet or medically equal a Listed Impairment. However, an "ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Id. at 683(citing Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001)).

---

    5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;
**AND**
  B.  **Resulting in at least two of the following**:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.06 (emphases added).

According to the specification in the federal regulation, regarding Listing 12.08, Personality Disorders,

12.08 Personality Disorders: A personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress. Characteristic features are typical of the individual's long-term functioning and are not limited to discrete episodes of illness.
**The required level of severity for these disorders is met when the requirements in both A and B are satisfied.**
  A. Deeply ingrained, maladaptive patterns of behavior associated with one of the following:
    1. Seclusiveness or autistic thinking; or
    2. Pathologically inappropriate suspiciousness or hostility; or
    3. Oddities of thought, perception, speech and behavior; or
    4. Persistent disturbances of mood or affect; or
    5. Pathological dependence, passivity, or aggressivity; or
    6. Intense and unstable interpersonal relationships and impulsive and damaging behavior;
    **And**
  B.  **Resulting in at least two of the following**:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.08 (emphases added).

Although lacking from his Opening Brief, in his Reply Brief, plaintiff provided the

following effort to establish equivalence:

> Plaintiff contends his mental health impairments which include
> depression, anxiety disorder and borderline personality disorder in
> combination with his inextricably linked fatigue meet or equal medical
> listing 12.04, 12.06, and 12.08 in accordance with 20 CFR Part 404,
> Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). The
> medical evidence, Plaintiff's testimony and Drs. Zarkowski and
> Oyemaja's disability medical opinions established that Plaintiff satisfied
> the B Criteria with two "marked" limitations in concentration,
> persistence and pace, as well as social functioning.

(Reply, ECF No. 26, p. 9).

There are a number of problems with plaintiff's argument. Even if the Court

accepts plaintiff's argument that the ALJ erred in failing to consider the effect of his

fatigue from his combined mental and physical impairments, plaintiff has failed to

demonstrate that any harm resulted from this alleged failure. Although plaintiff contends

that the medical evidence, plaintiff's testimony and the opinion evidence from Drs.

Zarkowski and Oyamaja established that plaintiff had marked limitations in maintaining

social functioning (part of the "B Criteria, see supra, n.2), the Court has concluded that

the ALJ's failure to credit plaintiff's testimony was proper, as well as the ALJ's failure to

credit fully the medical opinion evidence from Drs. Zarkowski and Oyamaja regarding

the degree of plaintiff's limitations in social functioning, see supra, sections I and II.

Plaintiff has not directed the Court to other medical evidence in the record, or new

evidence, that demonstrates that the ALJ's decision regarding social limitations was not

based on substantial evidence in the record as a whole.

The Court finds that the ALJ considered plaintiff's fatigue as it derived from his HIV status and considered properly plaintiff's alleged mental impairments and resultant fatigue. The ALJ accommodated for plaintiff's symptoms "of fatigue and morning nausea" by limiting plaintiff "to light work, with the opportunity to change positions every hour (see Tr. 24). In addition, even if the ALJ erred in not considering explicitly the combined effects of plaintiff's fatigue from all his impairments, plaintiff has not demonstrated harmful error. See Molina, supra, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; see also 28 U.S.C. § 2111; Shinsheki v. Sanders, 556 U.S. 396, 407 (2009).

According to plaintiff's argument, plaintiff's impairments met or medically equaled a Listing, in part, due to plaintiff's marked impairment in social functioning (see Reply, ECF No. 26, p. 9). However, the ALJ properly failed to credit fully plaintiff's testimony and the medical evidence regarding plaintiff's limitations in social functioning, see supra, sections I and II. Regarding the Listings, the ALJ found that with respect to "social functioning, the claimant has moderate difficulties" (Tr. 19). In addition to being supported by the ALJ's discussions regarding plaintiff's testimony and the medical opinions, this finding by the ALJ regarding plaintiff's social functioning also is supported by the following findings by the ALJ:

> [Plaintiff] is anxious at times, is somewhat socially isolated, has occasional anger problems, and has some difficulty in relationships. However, he is able to establish and maintain relationships with others. He has two or three close friends and plays cards with them a couple times per week (internal citation to Exhibit 4E, 22F/2). He generally interacts appropriately with providers (internal citation to Exhibits 11F, 13F, 24F). He goes out a couple times per week, uses public

transportation, visits the zoo and the park, and shops for groceries (internal citation to Exhibit 4E, 22F/2). In January, 2011, he reported plans to volunteer at the zoo and to start a support group in his building (internal citation to Exhibit 24F/2).

(Tr. 19).

For the reasons stated and based on the ALJ's decision and the relevant record, the Court concludes that the ALJ's step three findings regarding plaintiff's moderate difficulties in social functioning are supported by substantial evidence in the record.

The Court also concludes that any error in the ALJ's review of plaintiff's fatigue from his combined mental and physical impairments was harmless error and did not affect the ALJ's findings regarding plaintiff's moderate limitations in social functioning. As the Court has upheld the ALJ's (step three) finding regarding plaintiff's moderate social difficulties, plaintiff's argument that his impairments met or medically equaled a Listed Impairment due to his marked limitations in social functioning necessarily fails, regardless of the ALJ's assessment of plaintiff's fatigue.

For the reasons stated, the Court concludes that the ALJ did not commit harmful error in his step three determination regarding whether or not plaintiff's impairments met or medically equaled a Listed Impairment.

IV. <u>Plaintiff's residual functional capacity ("RFC") analysis was proper and the hypothetical presented to the vocational expert contained all of plaintiff's limitations as contained in the RFC, and therefore also was proper</u>.

Plaintiff contends that the RFC analysis by the ALJ was improper because it failed to take into consideration all of the limitations opined by Drs. Zarkowski, Yuodelis-Flores and Oyemaja (see Opening Brief, ECF No. 16, pp. 22-23). However, this Court already has determined that the ALJ's review of the opinions of Drs. Zarkowski, Yuodelis-Flores and Oyemaja was proper and based on substantial evidence in the record as a whole, see supra, section II, A. Plaintiff provides no additional argument regarding plaintiff's RFC.

Defendant contends that plaintiff's argument regarding the ALJ's step five finding and the foundation hypothetical presented to the vocational expert is premised entirely on plaintiff's challenges to the ALJ's RFC assessment (see Response, ECF No. 23, p. 17). Plaintiff admits in his Reply that the hypothetical question to the vocational expert "was defective for the same reasons" as argued in support of plaintiffs' RFC contention (see Reply, ECF No. 26, p. 10).

Based on the reasons stated above and the relevant record, the Court concludes that the ALJ's RFC assessment was proper and based on substantial evidence in the record as a whole. Likewise, the hypothetical question to the vocational expert based on this RFC was proper. For these reasons, the Court finds that the ALJ's RFC and step-five finding based on the resultant hypothetical to the vocational expert both were evaluated properly by the ALJ.

//

//

//

Based on these reasons and the relevant record, the undersigned recommends that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **DEFENDANT** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on July 13, 2012, as noted in the caption.

Dated this 20th day of June, 2012.

J. Richard Creatura
United States Magistrate Judge